The People of the State of Illinois, Plaintiff-Appellee, *v.* Marvin E. Ash, Defendant-Appellant.

(No. 72-337;

Second District—January 10, 1974.

Edward F. Zahour, of Chicago, for appellant.

William V. Hopf, State's Attorney, of Wheaton (Malcolm F. Smith, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Defendant was convicted after a jury trial of driving while under the influence of intoxicating liquor (Ill. Rev. Stat. 1971, ch. 95½, par. 11—501(a)). He appeals from the judgment and the fine imposed in the

amount of $150. The admission of an audio-video tape, a portion of which had been erased after a preliminary viewing by the court, out of the jury's presence, is urged as a basis for outright reversal. Defendant also argues that the instruction defining intoxication was erroneous and justifies a new trial.

At trial the arresting officer testified that he observed defendant's car approaching in the opposite lane, then crossing the center line with all four wheels, forcing the officer's patrol car off the road and continuing in the wrong lane for one-eighth to one-quarter of a block. The officer then made a U-turn and pursued defendant, activating an audio-video camera installed in his car. Defendant made a left turn onto an intersecting road, narrowly missing a telephone pole approximately twenty feet from the roadway. Defendant's vehicle then returned to the road and stopped some seventy-five or eighty-five feet from the intersection.

The officer further testified that when defendant got out of his car he smelled the strong odor of alcohol on defendant's breath. Defendant took one-half step toward him and fell back against the car. Subsequently defendant was placed under arrest for driving in the wrong lane and informed that he would be taken to the station for further investigation.

When a second patrol car arrived to take him to the station, defendant weaved and swayed as he walked to the patrol car and was helped into the car by two officers. The arresting officer also went to the station and continued to tape the proceedings with the same unit after removing it from his vehicle. In his opinion, defendant was intoxicated.

Prior to its admission at trial the video tape was first viewed in its entirety by the court and both counsel out of the presence of the jury, and the court ordered the deletion of the audio portion of the station house taping concerning defendant's refusal to take a breathalyzer test in compliance with Ill. Rev. Stat. 1971, ch. 95½, par. 11—501(h).

However, the entire portion of the station house proceedings including the preliminary occurrences to the performance test was erased by the State.

As a result defense counsel objected to showing the tape to the jury and moved for a mistrial. The court overruled the objection and denied the motion but permitted defendant to cross-examine the officers concerning what happened during the portion of the tape which was erased.

In addition, the court recalled for the record his observations of the portion of the tape which had been erased:

> "At the time the police officer asked the defendant to take the performance tests, he also asked the defendant if he was willing to take a Breathalyzer test. At that time the defendant said he did not wish to take any tests. He would not take a Breathalyzer

test. He would not cooperate in any way. Would not answer any questions or cooperate in any way.

Now, he later changed his mind. The police went back to the question of taking tests a couple of more times. I do not believe, and I so ruled that they did not use any undue duress. He never changed his mind on the Breathalyzer test.

He did change his mind on the performance tests. He said, 'All right. If this is what you want me to do, I will do it.' Or words to that effect. And he did it. He did take the performance tests as could be seen from the tape."

On cross-examination, relating to the erased portion of the tape, the arresting officer testified that he became "emotionally upset with the defendant" in response to defendant's statement that he was a good person and never hurt anybody. He told defendant that he was lucky he did not hurt anybody because he was on the wrong side of the road. He testified that defendant said "No argument there" when he was asked whether he remembered almost hitting the officer head-on and almost hitting the telephone pole.

Defendant testified in his own behalf that he drank a small amount of beer prior to the arrest; and that his car crossed the center line when he took his eyes off the road to light a cigarette. He claimed he did not know that a squad car was pursuing him until the blinking lights came on shortly before he stopped. He stated that he refused to take the breathalyzer test but volunteered to take the physical tests.

The defendant contends that the erasure of the video tape deprived him of favorable evidence. He does not argue that the tests were involuntary but maintains that the jury would have been favorably influenced by the showing of coercion and police anger evinced in the deleted portion. Defendant concludes that the State's erasure of that segment was such a deprivation that he is entitled to a reversal.

■■ We cannot agree with defendant's analysis. The issue may not be properly framed in terms of the withholding of evidence (cf. People v. Smith (1972), 5 Ill.App.3d 429, 430) since the erased portions were seen by the court and counsel. Although the deletion exceeded the order, the court exercised its discretion by allowing admission of the video tape. The court predicated its ruling on the fact that the complete tape had been seen prior to the erasure and the court had found no police duress.

Trial judges have been accorded great latitude in exercising their discretion to impose conditions upon the admissibility of taped demonstrative evidence. (See United States v. Frazier (2d Cir. 1973), 479 F.2d 983, 985; People v. Mitchell (1972), 40 App. Div. 2d 117, 338 N.Y.S.2d 313, 316-7; United States v. Bryant (2d Cir. 1973), 480 F.2d 785.) Recently,

in *People v. Fenelon* (1973), 14 Ill.App.3d 622, we upheld the discretion of the trial court, sitting without a jury, to exclude from consideration the audio portion of the video tape obtained without compliance with the rule of *Miranda*. The admission of the film as edited showing the performance of coordination tests was upheld as physical evidence. *Fenelon*, however, involved no erasure and the complete tape was available on review.

■■ We are, of course, concerned that due to no fault of the defendant, we do not have the same complete video tape observed by the trial court. However, on the facts revealed by the record before us, we are sufficiently assured that the trial court properly exercised its discretion. We also note that defendant has failed to establish prejudice resulting from the erasure.

The court and both counsel viewed the tape before it was edited by partial erasure. The court stated its recollection of the substance of the omitted portion on the record. Defense counsel was also permitted to examine the officer as to all aspects of the erased portion.

In addition, the trial court's finding that the omitted portion would not evidence any coercion with respect to the tests is further supported by defendant's own testimony at trial that he voluntarily took the performance test. We also deem significant defendant's failure to testify concerning any adverse affect of the officer's verbal outburst upon him.

■■ In our view the record so clearly supports the verdict that defendant was guilty of driving while intoxicated that the deleted portion of the video tape could not have resulted in any other conclusion than that reached below. (*People v. Dickman* (1969), 117 Ill.App.2d 436, 443.) Therefore, any error in the editing or admission of the film must be viewed as harmless beyond a reasonable doubt. *People v. Jones* (1970), 125 Ill.App.2d 30, 38-39; *People v. Owens* (1970), 126 Ill.App.2d 379, 383.

■■ The following instruction was given to the jury over defendant's objection:

> "Under the influence of intoxicating liquor means a condition in which a person finds himself after having consumed some intoxicating beverage in such quantity that its effect on him adversely affects his actions, reactions, conduct, movement or mental processes or impairs his reactions to an appreciable degree thereby lessening his ability to operate a motor vehicle as a reasonably prudent person."

Defendant contends that the language unnecessarily misled and confused the jury because "adversely", "impairs". "appreciable degree", and "reasonably prudent person" are included without further definition. Further,

defendant cites *People v. Knutson* (1958), 17 Ill.App.2d 251, in support of his contention that the instruction defines symptoms; and that such symptoms may be manifest in one not under the influence.

We do not agree that the instruction is misleading or otherwise erroneous. It is substantially in the form which has been approved in dram shop cases. (See I.P.I.—Civil No. 150.15; *Navarro v. Lerman* (1964), 48 Ill.App.2d 27, 36.) Further, an instruction substantially similar to the one before us was approved in *People v. Stebbins* (1952), 345 Ill.App. 456, 458; and it is not subject to *Knutson*'s condemnation.

The *Stebbins* instruction was expressly approved in *People v. Knutson* (1958), 17 Ill.App.2d 251, 258. *Knutson* condemned an additional instruction equating certain symptoms with the effects of being under the influence of intoxicating liquor. The present case involves no such instruction.

For the aforementioned reasons, we affirm the judgment below.

Affirmed.

T. MORAN, P. J., and GUILD, J., concur.